**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CRIDER SOLUTIONS, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 1:18-cv-00958** |
| | : | |
| **v.** | : | **Judge Solomon Oliver, Jr.** |
| | : | |
| **XENIOS, LLC,** | : | **Magistrate Judge Jonathan D.** |
| | : | **Greenberg** |
| **Defendant.** | : | |

## ANSWER AND COUNTERCLAIM OF DEFENDANT XENIOS, LLC

## ANSWER

For its Answer to Plaintiff Crider Solutions, Inc.'s ("Crider" or "Plaintiff") Complaint, Defendant Xenios, LLC ("Xenios" or "Defendant") states as follows:

## FIRST DEFENSE

1.      Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint and, therefore, denies the same.

2.      Xenios admits the allegations contained in paragraph 2 of the Complaint.

3.      Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint and, therefore, denies the same.

4.      Xenios admits the allegations contained in paragraph 4 of the Complaint.

5.      In response to paragraph 5 of the Complaint, Xenios admits that one of the assets it purchased from Cobra Systems, Inc. was the 2TouchPOS point of sale system ("2Touch").  Xenios

is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 5 of the Complaint and, therefore, denies the same.

6.      Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint and, therefore, denies the same.

7.      Xenios denies the allegations contained in paragraph 7 of the Complaint.

8.      Xenios denies the allegations contained in paragraph 8 of the Complaint.

9.      Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint and, therefore, denies the same.

10.     In response to paragraph 10 of the Complaint, Xenios admits that it executed a Dealer Agreement with Crider on or about February 25, 2010.  Xenios is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10 of the Complaint and, therefore, denies the same.

11.     In response to paragraph 11 of the Complaint, Xenios admits that Crider was an authorized 2Touch dealer pursuant to the Dealer Agreement until December 29, 2017.  Any other allegation or inference contained in paragraph 11 is denied.

12.     Xenios denies the allegations contained in paragraph 12 of the Complaint.

13.     In response to paragraph 13 of the Complaint, Xenios admits that it issued licenses to customers, typically bars and restaurants, and not to Crider.  Any other allegation or inference contained in paragraph 13 is denied.

14.     Xenios admits the allegations contained in paragraph 14 of the Complaint.

15.     Xenios admits the allegations contained in paragraph 15 of the Complaint.

2

22421866.1

16. In response to paragraph 16 of the Complaint, Xenios admits that it issued licenses to customers, typically bars and restaurants, and not to Crider. Any other allegation or inference contained in paragraph 16 is denied.

17. Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint and, therefore, denies the same.

18. Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and, therefore, denies the same.

19. In response to paragraph 19 of the Complaint, other 2Touch dealers provide technical support services for 2Touch. Xenios is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 19 of the Complaint and, therefore, denies the same.

20. Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint and, therefore, denies the same.

21. Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Complaint and, therefore, denies the same.

22. Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint and, therefore, denies the same.

23. Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint and, therefore, denies the same.

24. Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint and, therefore, denies the same.

25. In response to paragraph 25 of the Complaint, Xenios admits that it requested that Crider cease advertising and marketing at a Las Vegas convention, which Xenios was permitted

to do pursuant to the Dealer Agreement, because Crider was providing information regarding 2Touch that was false and/or misleading, variated from Xenios' policies, instructions and guidelines, and caused confusion to 2Touch end-users.  Any other allegation or inference contained in this paragraph is denied.

26.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint and, therefore, denies the same.

27.     Xenios denies the allegations contained in paragraph 27 of the Complaint.

28.     In response to paragraph 28 of the Complaint, Xenios admits the first sentence. Xenios denies that Version 4.0 is not capable of integrating with third-party processors, although a few cannot process with Version 4.0.  Any other allegation or inference contained in this paragraph is denied.

29.     Xenios denies the allegations contained in paragraph 29 of the Complaint.

30.     Xenios denies the allegations contained in paragraph 30 of the Complaint.

31.     Xenios denies the allegations contained in paragraph 31 of the Complaint.

32.     Xenios admits the allegations contained in the first sentence of paragraph 32 of the Complaint.  Xenios denies the allegations contained in the second sentence of paragraph 32 of the Complaint.

33.     Defendant denies the allegations contained in paragraph 33 of the Complaint.

34.     Defendant denies the allegations contained in paragraph 34 of the Complaint.

35.     Defendant denies the allegations contained in paragraph 35 of the Complaint.

36.     In response to paragraph 36 of the Complaint, Xenios admits that Exhibit B appears to be a true and accurate copy of an email authored by Matt Crider, and the email speaks for itself. Any other allegation or inference contained in this paragraph is denied.

22421866.1

37.     In response to paragraph 37 of the Complaint, Xenios admits that Exhibit C appears to be a true and accurate copy of email correspondence dated December 11, 2017, and the email speaks for itself.  Any other allegation or inference contained in this paragraph is denied.

38.     In response to paragraph 38 of the Complaint, Xenios states that Exhibit C speaks for itself.  Any other allegation or inference contained in this paragraph is denied.

39.     In response to paragraph 39 of the Complaint, Xenios states that Exhibit C speaks for itself.  Any other allegation or inference contained in this paragraph is denied.

40.     Defendant admits the allegations contained in paragraph 40 of the Complaint.

41.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41 of the Complaint and, therefore, denies the same.

42.     In response to paragraph 42 of the Complaint, Xenios admits that Exhibit D appears to be a true and accurate copy of email correspondence dated December 14, 2017, and the email speaks for itself.  Any other allegation or inference contained in this paragraph is denied.

43.     In response to paragraph 43 of the Complaint, Xenios states that Exhibit D speaks for itself.  Any other allegation or inference contained in this paragraph is denied.

44.     In response to paragraph 44 of the Complaint, Xenios states that Exhibit D speaks for itself.  Any other allegation or inference contained in this paragraph is denied.

45.     In response to paragraph 45 of the Complaint, Xenios states that Exhibit D speaks for itself.  Any other allegation or inference contained in this paragraph is denied.

46.     Defendant denies the allegations contained in paragraph 46 of the Complaint.

47.     Defendant denies the allegations contained in paragraph 47 of the Complaint.

48.     In response to paragraph 48 of the Complaint, Xenios states that Exhibit E speaks for itself.  Any other allegation or inference contained in this paragraph is denied.

49.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 of the Complaint and, therefore, denies the same.

50.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 of the Complaint and, therefore, denies the same.

51.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 of the Complaint and, therefore, denies the same.

52.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52 of the Complaint and, therefore, denies the same.

53.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 of the Complaint and, therefore, denies the same.

54.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54 of the Complaint and, therefore, denies the same.

55.     Defendant denies the allegations contained in paragraph 55 of the Complaint.

56.     Defendant admits the allegations contained in paragraph 56 of the Complaint.

57.     In response to paragraph 57 of the Complaint, Xenios states that Exhibit F speaks for itself.  Any other allegation or inference contained in this paragraph is denied.

58.     In response to paragraph 58 of the Complaint, Xenios states that Exhibit G speaks for itself.  Any other allegation or inference contained in this paragraph is denied.

59.     Defendant denies the allegations contained in paragraph 59 of the Complaint.

60.     In response to paragraph 60 of the Complaint, Xenios states that it does not need permission to contact an end-user of Xenios' proprietary and trademarked software system regarding its software system, particularly when Xenios does not have an authorized dealer

22421866.1

servicing its products an end-user may be using.  Any other allegation or inference contained in this paragraph is denied.

61.     In response to paragraph 61 of the Complaint, Xenios states that it does not need permission to contact an end-user of Xenios' proprietary and trademarked software system regarding its software system, particularly when Xenios does not have an authorized dealer servicing the products an end-user may be using.  Any other allegation or inference contained in this paragraph is denied.

62.     In response to paragraph 62 of the Complaint, Xenios does not dispute that it informs end-users of 2Touch that Crider is no longer an authorized dealer of 2Touch.  Any other allegation or inference contained in this paragraph is denied.

63.     Defendant denies the allegations contained in paragraph 63 of the Complaint.

64.     Defendant denies the allegations contained in paragraph 64 of the Complaint.

65.     Defendant admits the allegations contained in paragraph 65 of the Complaint.

66.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 of the Complaint and, therefore, denies the same.

67.      Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 of the Complaint and, therefore, denies the same.

68.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68 of the Complaint and, therefore, denies the same.

69.     Defendant denies the allegations contained in paragraph 69 of the Complaint.

70.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70 of the Complaint and, therefore, denies the same.

22421866.1

71.     In response to paragraph 71 of the Complaint, Xenios restates all of its previous responses and incorporates herein.

72.     Defendant denies the allegations contained in paragraph 72 of the Complaint.

73.     Defendant denies the allegations contained in paragraph 73 of the Complaint.

74.     Defendant denies the allegations contained in paragraph 74 of the Complaint.

75.     Defendant denies the allegations contained in paragraph 75 of the Complaint.

76.     Defendant denies the allegations contained in paragraph 76 of the Complaint.

77.     Defendant denies the allegations contained in paragraph 77 of the Complaint.

78.     Defendant denies the allegations contained in paragraph 78 of the Complaint.

79.     Defendant denies the allegations contained in paragraph 79 of the Complaint.

80.     In response to paragraph 80 of the Complaint, Xenios restates all of its previous responses and incorporates herein.

81.     Defendant denies the allegations contained in paragraph 81 of the Complaint.

82.     Defendant denies the allegations contained in paragraph 82 of the Complaint.

83.     Defendant denies the allegations contained in paragraph 83 of the Complaint.

84.     Defendant denies the allegations contained in paragraph 84 of the Complaint.

85.     Defendant denies the allegations contained in paragraph 85 of the Complaint.

86.     Defendant denies the allegations contained in paragraph 86 of the Complaint.

87.     Defendant denies the allegations contained in paragraph 87 of the Complaint.

88.     In response to paragraph 88 of the Complaint, Xenios restates all of its previous responses and incorporates herein.

89.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 89 of the Complaint and, therefore, denies the same.

22421866.1

90.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90 of the Complaint and, therefore, denies the same.

91.     Defendant denies the allegations contained in paragraph 91 of the Complaint.

92.     Defendant denies the allegations contained in paragraph 92 of the Complaint.

93.     Defendant denies the allegations contained in paragraph 93 of the Complaint.

94.     Defendant denies the allegations contained in paragraph 94 of the Complaint.

95.     Defendant denies the allegations contained in paragraph 95 of the Complaint.

96.     Defendant denies the allegations contained in paragraph 96 of the Complaint.

97.     In response to paragraph 97 of the Complaint, Xenios restates all of its previous responses and incorporates herein.

98.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98 of the Complaint and, therefore, denies the same.

99.     Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99 of the Complaint and, therefore, denies the same.

100.    Defendant denies the allegations contained in paragraph 100 of the Complaint.

101.    Defendant denies the allegations contained in paragraph 101 of the Complaint.

102.    Defendant denies the allegations contained in paragraph 102 of the Complaint.

103.    Defendant denies the allegations contained in paragraph 103 of the Complaint.

104.    Defendant denies the allegations contained in paragraph 104 of the Complaint.

105.    Defendant denies the allegations contained in paragraph 105 of the Complaint.

106.    Defendant denies the allegations contained in paragraph 106 of the Complaint.

107.    Defendant denies the allegations contained in paragraph 107 of the Complaint.

108.    Defendant denies the allegations contained in paragraph 108 of the Complaint.

22421866.1

109.    Defendant denies the allegations contained in paragraph 109 of the Complaint.

110.    Defendant denies the allegations contained in paragraph 110 of the Complaint.

111.    Defendant denies the allegations contained in paragraph 111 of the Complaint.

112.    Defendant denies the allegations contained in paragraph 112 of the Complaint.

113.    Defendant denies the allegations contained in paragraph 113 of the Complaint.

114.    Defendant denies the allegations contained in paragraph 114 of the Complaint.

115.    Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 115 of the Complaint and, therefore, denies the same.

116.    Xenios is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 116 of the Complaint and, therefore, denies the same.

117.    Defendant denies the allegations contained in paragraph 117 of the Complaint.

118.    Defendant denies the allegations contained in paragraph 118 of the Complaint.

119.    Defendant denies the allegations contained in paragraph 119 of the Complaint.

120.    Defendant denies the allegations contained in paragraph 120 of the Complaint.

121.    Defendant denies the allegations contained in paragraph 121 of the Complaint.

122.    Defendant denies the allegations contained in paragraph 122 of the Complaint.

123.    Defendant denies the allegations contained in paragraph 123 of the Complaint.

124.    Defendant denies the allegations contained in paragraph 124 of the Complaint.

125.    In response to paragraph 125 of the Complaint, Xenios restates all of its previous responses and incorporates herein.

126.    Defendant denies the allegations contained in paragraph 126 of the Complaint.

127.    Defendant denies the allegations contained in paragraph 127 of the Complaint.

128.    Defendant denies the allegations contained in paragraph 128 of the Complaint.

22421866.1

129. Defendant denies the allegations contained in paragraph 129 of the Complaint.

130. Defendant denies the allegations contained in paragraph 130 of the Complaint.

131. Defendant denies the allegations contained in paragraph 131 of the Complaint.

132. Defendant denies the allegations contained in paragraph 132 of the Complaint.

133. Defendant denies the allegations contained in paragraph 133 of the Complaint.

134. Defendant denies the allegations contained in paragraph 134 of the Complaint.

135. Defendant denies the allegations contained in paragraph 135 of the Complaint.

136. In response to paragraph 136 of the Complaint, Xenios restates all of its previous responses and incorporates herein.

137. In response to paragraph 137 of the Complaint, Xenios states that the referenced email speaks for itself.  Any other allegation or inference contained in this paragraph is denied.

138. Defendant denies the allegations contained in paragraph 138 of the Complaint.

139. Defendant denies the allegations contained in paragraph 139 of the Complaint.

140. Defendant denies the allegations contained in paragraph 140 of the Complaint.

141. Defendant denies the allegations contained in paragraph 141 of the Complaint.

142. In response to paragraph 142 of the Complaint, Xenios states that the referenced email speaks for itself.  Any other allegation or inference contained in this paragraph is denied.

143. Defendant denies the allegations contained in paragraph 143 of the Complaint.

144. Defendant denies the allegations contained in paragraph 144 of the Complaint.

145. Defendant denies the allegations contained in paragraph 145 of the Complaint.

146. Defendant denies the allegations contained in paragraph 146 of the Complaint.

147. Defendant denies the allegations contained in paragraph 147 of the Complaint.

148. Defendant denies the allegations contained in paragraph 148 of the Complaint.

22421866.1

149.    Defendant denies the allegations contained in paragraph 149 of the Complaint.

150.    Defendant denies the allegations contained in paragraph 150 of the Complaint.

## SECOND DEFENSE

151.    Plaintiff's Complaint fails to state a claim against Defendant upon which relief can be granted.

## THIRD DEFENSE

152.    Plaintiff's Complaint fails, in whole or in part, because it fails to plead facts with requisite specificity.

## FOURTH DEFENSE

153.    Plaintiff's Complaint fails, in whole or in part, because no publication was made by Xenios.

## FIFTH DEFENSE

154.    Plaintiff's Complaint fails, in whole or in part, because any alleged statements made by Xenios were (1) truthful, (2) opinions, and/or (3) privileged.

## SIXTH DEFENSE

155.    Plaintiff's Complaint is barred, in whole or in part, because Defendant did not act with malice.

## SEVENTH DEFENSE

156.    Plaintiff's Complaint fails, in whole or in part, because of the doctrines of setoff and/or recoupment.

## EIGHTH DEFENSE

157.    Plaintiff's Complaint fails because of the doctrines of unclean hands and estoppel.

22421866.1

## NINTH DEFENSE

158.    Plaintiff's Complaint fails because it breached the subject Dealer Agreement between the parties.

## TENTH DEFENSE

159.    Plaintiff's Complaint fails, in whole or in part, because Xenios never made any false representation of fact regarding Plaintiff's business or Plaintiff's relationship to Xenios or its proprietary software, 2Touch.

## ELEVENTH DEFENSE

160.    Plaintiff's Complaint is barred, in whole or in part, because Defendant had no intent to, and in fact did not, interfere with a contract or business relationship of Plaintiff.

## TWELFTH DEFENSE

161.    To the extent Defendant is found to have any liability to Plaintiff, which Defendant specifically denies, Plaintiff has failed to mitigate its damages.

## THIRTEENTH DEFENSE

162.    Plaintiff's Complaint is barred, in whole or in part, because Plaintiff had not suffered any damages as a result of any activity by Defendant.

## FOURTEENTH DEFENSE

163.    Plaintiff's Complaint is barred, in whole or in part, by the economic interest defense, justification and/or privilege.

## FIFTEENTH DEFENSE

164.    Plaintiff's Complaint is barred, in whole or in part, because Plaintiff has asserted claims based on improper choice of law and/or statutes.

22421866.1

WHEREFORE, Defendant, having fully answered Plaintiff's Complaint, asks that judgment be entered for Defendant and against Plaintiff and that Defendant be awarded its costs incurred in this action.

Respectfully submitted,

/s/ Joseph C. Pickens
Joseph C. Pickens       (0076239)
jpickens@taftlaw.com
Taft Stettinius & Hollister, LLP
65 East State Street, Suite 1000
Columbus, Ohio 43215
Telephone: (614) 221-2838
Facsimile:  614) 221-2007

Attorney for Defendant

14

22421866.1

## COUNTERCLAIM

Defendant/Counterclaimant Xenios, LLC ("Xenios") for its Counterclaim against Plaintiff Crider Solutions, Inc. ("Crider"), alleges as follows:

## PARTIES

1.     Xenios is a New York limited liability company with its principal place of business in New York.

2.     Crider is an Ohio corporation with its principal place of business in Richland County, Ohio.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) based upon the diversity of citizenship of the parties and the amount in controversy exceeding seventy-five thousand dollars exclusive of interest and costs.  In addition, the Court has jurisdiction pursuant to 28 U.S.C. § 1331.

4.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Crider resides within this judicial district, and the parties have a contract which includes a forum selection clause requiring this dispute to be litigated in this forum or in Ohio state courts.

## FACTS

**Background**

5.     Xenios provides point-of-sale services for bars, restaurants and similar businesses throughout the United States.  Among other services, Xenios: (a) leases point-of-sale equipment, (b) owns and offers to end-users a proprietary software system called 2TouchPOS ("2Touch"), and (c) provides 24-hour help and maintenance services to end-users regarding leased equipment and its 2Touch system.

22421866.1

6.      On or about October 22, 2009, Xenios purchased all of the assets relating to 2Touch from a company called Cobra Systems, Inc. ("Cobra"). A true and accurate copy of this Agreement of Sale is attached hereto as Exhibit A.

7.      As part of the Agreement of Sale, Xenios obtained all rights and interest in 2Touch, including but not limited to the software code, all licenses to manage the software code and licenses to third-parties, all trademark and copyrights, customer lists and service contracts.

8.      On February 25, 2010, Xenios and Crider executed a Dealer Agreement. A true and accurate copy of the Dealer Agreement is attached hereto as Exhibit B.

9.      The Dealer Agreement generally provided Crider the right to resell certain "Products" of Xenios to end-users, namely bars and restaurants. Pursuant to Section 2 of the Dealer Agreement, Xenios granted to Crider "the right to market and sell the Products…" Crider's duties included providing "installation and support services" for Xenios' Products (Section 4.1).

10.     Section 1.7 of the Dealer Agreement defines "Products" as "Equipment, Software and systems incorporating Equipment and/or Software and Services provided or to be provided by the Company."

11.     Section 1.5 of the Dealer Agreement defines "Equipment" as any "2Touch equipment and software."

12.     Section 1.4 of the Dealer Agreement defines "Services" as "any services provided by [Xenios] or [Crider] to customer under this Agreement, including, without limitation, installation and support services as well as maintenance services."

13.     Crider acted as an authorized dealer for Xenios until December 29, 2017, when the Dealer Agreement was terminated.

16

14.    As a result of termination of the Dealer Agreement, Crider no longer has access to many tools necessary to adequately and effectively service and maintain the 2Touch software of 2Touch licensees.  For example, Crider can no longer access a "Dealer Portal" through Xenios. This Dealer Portal allows dealers to service the 2Touch software of its customers.  Though the Dealer Portal, a dealer can run diagnostic tests of a customer's 2Touch system, address complaints and problems and troubleshoot a customer's 2Touch system, clean and de-bug a customer's 2Touch system, and directly update a customer's 2Touch system with the latest upgrades and software codes in improve security and performance.

15.    Xenios often upgrades 2Touch to provide the latest security and performance enhancements.  For example, Version 4.0 of 2Touch was released in February 2016.  Since that time and as of the date of this filing, thirteen upgrades have been made to Version 4.0.  Version 4.13 is currently the most up-to-date version.  Crider no longer possesses to access and ability to install the updates to its customers' 2Touch systems

**2Touch Features**

16.    2Touch is a point-of-sale software system that serves and assists multiple functions in the bar and restaurant industry, including the receipt and input of customer orders, and integration with and printing orders for kitchens and bars for food and drink preparation.

17.    In addition, 2Touch performs and assists with important business applications such as time and labor management, payroll, accounting, employee theft, food and drink inventory control, and credit card and other payment processing.

18.    For every bar and restaurant that used 2Touch, Xenios issued a 2Touch license for every terminal in which 2Touch was installed within that bar and restaurant.

17

19.     Because of the importance of data security and protection of customer financial information, Xenios takes seriously and works very hard researching and updating its software code to provide maximum protection for any licensee of 2Touch, particularly with respect to credit card payment processing.

20.     2Touch provides to its licensees a validated Payment Card Industry (PCI) Validated Point-to-Point Encryption (P2PE) Solution, which protects cardholder data throughout the payment process.

21.     Xenios is required to comply with the detailed security requirements and testing procedures of the PCI Security Standards Council.  When new security requirements are issued, Xenios provides updates to customer's 2Touch system to comply with the requirements.

22.     Xenios provides support services to bars and restaurants that use 2Touch, which includes updates to its software to protect data breaches.

**Crider's False Statements**

23.     Even though the Dealer Agreement was terminated on December 29, 2017, Crider had not sold a new 2Touch account since approximately June 7, 2017.

24.     Despite being an authorized 2Touch dealer, Crider offered at least one other point-of-sale software system called Emagine to its customers.

25.     Emagine is a product that directly competes with 2Touch.

26.     On October 30, 2017, Crider issued a blast email bulletin to all of its customers that used 2Touch advising them that Xenios would not be making changes to 2Touch to accommodate new MasterCard Series 2 BIN credit cards.  A copy of this bulletin is attached hereto as Exhibit C. A MasterCard Series 2 BIN credit card was a new, encrypted credit card which started with the number "2," and had just started to be issued to some Mastercard customers.

27. In the bulletin, Crider then falsely informed all 2Touch customers that they needed to purchase an upgraded version of 2Touch in order to process all credits cards, not just the brand new MasterCard Series 2 BIN credit card. Crider also advised as another option that customers could disable the credit card module in 2Touch resulting in the inability to process credit cards through 2Touch, which is not an attractive option to end-users.

28. Crider also advised all of their 2Touch customers in the bulletin that if they wanted a new point-of-sale software that could integrate credit card processing, Crider could offer a solution, which upon information and belief, was 2Touch's competitor, Emagine.

29. From the time of the email blast on October 30, 2017 until mid-December 2017, Xenios was contacted by multiple bars and restaurants because Crider had advised them that Xenios was going out of business and that they must upgrade 2Touch versions in order to continue to accept credit card payments.

30. Crider caused multiple 2Touch customers to switch to different point-of-sale software as a result of Crider's misrepresentations of facts.

**Crider's Improper Use of 2Touch Licenses**

31. Every bar and restaurant that uses 2Touch must have a 2Touch license for every point-of-sale terminal in which 2Touch is installed. In other words, 2Touch is licensed per terminal, per location.

32. For instance, a large restaurant may have 10 or 15 point-of-sale terminals scattered around the restaurant for use by wait staff and bartenders.

33. When an authorized 2Touch dealer like Crider sold 2Touch to a customer, Xenios' policy was that Crider would place an order for the appropriate number of 2Touch licenses that the customer needed.

22421866.1

34.     Xenios would charge Crider a "Dealer" price for each license, and Crider would in turn charge the customer a retail price for each license, which was higher than the "Dealer" price so that Crider could make a profit on the sale.

35.     2Touch software pricing is posted on Xenios' website.  For example, for the issuance of up to two 2Touch licenses, the "Dealer" price is $600.00 each and the suggested MSRP is $1,399.00 each.

36.     Each new customer that was issued licenses was assigned a specific Product ID number by Xenios.

37.     Xenios' 2Touch Licensing Policy, which governed these transactions and is posted on its website, is attached hereto as Exhibit D.

38.     Some of the salient provisions of the Licensing Policy include:

> (a) "The first license granted to a business creates a location license.  The location license grants use of one or more 2Touch licenses at that physical address."
> (b) "Individual licenses can be added to or removed from a location license."
> (c) "A licensee can relocate the business and take the location license in whole to the new location." But "[t]he licensee must preserve the business persona including the business name and business type," and the "relocation must be local."
> (d) "The current licensee can transfer the location license to a new licensee so long as the location does not change and the business persona (including the business name and business type) is preserved."
> (e) "Transferring equipment or licensing to a new owner under any other circumstances is prohibited."
> (f) "Licenses are automatically deactivated when a location closes or stops using 2Touch."

39.     Upon an investigation in mid to late 2017, Xenios determined that Crider was manipulating the licensing policy for personal gain.

40.     Because each new licensee is issued a specific Product ID, Xenios possesses the ability to internally conduct an activity search for a specific Product ID, which provides all of the activities and locations relating to each license.

41.     When a bar or restaurant went out of business, Crider would take the 2Touch licenses that were issued to that bar or restaurant and sell them to new and unrelated businesses. Crider would not issue new purchase orders to Xenios for these licenses, yet would charge the new bar or restaurant for these licenses.

42.     Xenios' investigation uncovered many examples of this unauthorized and fraudulent practice, and Xenios continues to review its records for more of this illegal activity.

43.     As an example, on December 24, 2011, a restaurant in Chicago, Illinois called Silver Cloud Bar & Grill was issued five (5) new licenses, and was assigned the Product ID Number 2051-0011.  Silver Cloud Bar & Grill last accessed the licenses on March 13, 2015 at or around the time it went out of business.  Upon a search of Product ID Number 2051-0011's activity, Xenios discovered that on October 4, 2016, the software associated with these five (5) licenses was uploaded by a restaurant in Richmond, VA called The Mansion.  The Mansion continues to use these 2Touch licenses although Xenios never issued 2Touch licenses to them.

44.     Nothing in the Licensing Policy authorized Crider to transfer these licenses to The Mansion after Silver Cloud Bar & Grill went out of business. Pursuant to the Dealer Agreement and Licensing Policy, if Crider sold 2Touch to The Mansion, Crider was obligated to issue a purchase order to Xenios and pay Xenios for the issuance of five (5) new licenses, which would have amounted to $3,195.00.

45.     As another example, on December 26, 2010, a restaurant in Chicago, Illinois called Branch 27 was issued six (6) new licenses, and was assigned the Product ID Number 2051-0052. Branch 27 last accessed the licenses on July 5, 2013 at or around the time it went out of business. Upon a search of Product ID Number 2051-0052's activity, Xenios discovered that on October 28, 2013, the software associated with these six (6) licenses was first uploaded by a nightclub in

21

Cincinnati, Ohio called Ivy Cincinnati.  Ivy Cincinnati continues to use these 2Touch licenses although Xenios never issued 2Touch licenses to them.

46.     Nothing in the Licensing Policy authorized Crider to transfer these licenses to Ivy Cincinnati after Branch 27 went out of business. Pursuant to the Dealer Agreement and Licensing Policy, if Crider sold 2Touch to Ivy Cincinnati, Crider was obligated to issue a purchase order to Xenios and pay Xenios for the issuance of six (6) new licenses, which would have amounted to $3,745.00.

47.     So far in its investigation, Xenios has uncovered at least thirteen (13) instances of these unauthorized transfers totaling $53,230.00 in losses to Xenios.

**Crider's Improper Use of the 2Touch Trademark**

48.     The United States Patent and Trademark Office issued Xenios a trademark for 2TouchPOS and Design on August 16, 2016, Reg. No. 5,050,678, as depicted below.  A true and accurate copy of the registration certificate is attached hereto as Exhibit E.



22421866.1

49. Xenios was issued a Class 9 trademark for 2Touch: "Computer software for use in point of sale transaction management, transaction processing, transaction analysis and business management."

50. Xenios was also issued a Class 42 trademark for 2Touch: "Design, installation, updating and maintenance of computer software; Installation and repair of computer software, including mobile performance of such services on customer premises; Leasing of computer hardware and computer peripheral equipment for use in peripheral equipment for use in point-of-sale transactions; Preparation, update, installation and maintenance of computer software."

51. Pursuant to Section 4.5 of the Dealer Agreement, Crider is prohibited from using the 2Touch trademark or trade name without Xenios' prior consent.

52. Pursuant to Section 10 of the Dealer Agreement, Crider is prohibited from using any promotional material or advertisements utilizing any of the 2Touch trademarks or products without written consent from Xenios.

53. Pursuant to Section 21.1 of the Dealer Agreement, Crider was granted a limited license to use the 2Touch trademarks in the promotion of its products and services, but only during the term of the Dealer Agreement.

54. Pursuant to Section 24.3, upon expiration of the Dealer Agreement, Crider was obligated to "immediately cease" all use of the 2Touch trademarks, including any promotional or advertising purposes.

55. As of the date of filing of this Counterclaim, the 2Touch trademark is still displayed on many of the websites used by Crider for advertising and marketing purposes. A few of these websites include:

22421866.1

http://www.criderpos.com/about/

https://www.facebook.com/Crider-Solutions-Inc-148372618546614/

https://2touchpos-ohio.blogspot.com/

https://twitter.com/cridersolutions

56.     Crider knows the Dealer Agreement is terminated, yet intentionally and knowingly continues to use Xenios' mark. Continued use of the 2Touch name and trademark by Crider creates confusion to the public, as Crider is no longer an authorized dealer to market, sell or service 2Touch. Xenios' licensees are confused as to 2Touch's continued capabilities, Crider's relationship to Xenios and the ability to service 2Touch, and Xenios' ongoing business.

**Additional Improper Activities of Crider**

57.     Crider continues to falsely represent to its bars and restaurants that it is authorized to and has the ability to fully service the 2Touch software system.

58.     Because it is no longer an authorized dealer of 2Touch pursuant to the Dealer Agreement, Crider does not possess the authority to fully service 2Touch.

59.     Crider has no ability or authorization to provide updates to 2Touch and has no access to Xenios for 2Touch training or other information regarding the system.

60.     As a result of being an authorized dealer of 2Touch for many years, Crider has installed and continues to install software into its customers' 2Touch system that allows it to remotely access the 2Touch system. Not only is this now unauthorized, Xenios' policy has always been to only keep remote access open for a time period long enough to conduct whatever activity or service is necessary and never leave the access unattended. Xenios has determined that Crider has now been leaving remote access to its customers' 2Touch system open and unattended for long

24

periods of time.  This practice exposes 2Touch customers to an increased risk of hacking and theft, and exposes Xenios to liability because 2Touch is its proprietary software.

61.     Xenios has also determined that Crider has written a custom key called "time clock export" and embedded this into certain of its customers' 2Touch systems.  This modification of 2Touch has only been found on Crider's accounts, and was never authorized by Xenios.

## <u>COUNT I</u>
### (Breach of Contract – Dealer Agreement)

62.     Xenios realleges and restates all of the previous paragraphs as though fully set forth herein.

63.     The Dealer Agreement was a valid and enforceable contract between Xenios and Crider.

64.     Xenios performed all of its obligations under the Dealer Agreement.

65.     Crider breached the Dealer Agreement in multiple ways, including:

(a)     Crider falsely represented and continues to falsely represent to bars and restaurants that use 2Touch that it is authorized to and has the ability to fully service the 2Touch software system, despite termination of the Dealer Agreement.

(b)     Crider continues to use the 2Touch trademark and names on numerous websites for advertising and other purposes, which is expressly prohibited by the Dealer Agreement.

(c)     Crider continues to remotely access customers' 2Touch systems without authorization by Xenios.

(d)     Crider has modified the 2Touch software without Xenios' authorization or permission.

66.     In addition, the Dealer Agreement is subject to a duty of good faith and fair dealing, which may be maintained by Xenios as part of a breach of contract claim.

67.     Despite being an authorized dealer of 2Touch who agreed to "maintain the highest reputation for fair and ethical dealing…with customers in the promotion of" Xenios' products," (Section 2(b)) Crider misrepresented facts to customers about 2Touch's capabilities and steered 2Touch customers to a competing product.

68.     Xenios respectfully requests that this Court render judgment in its favor and against Crider on Count I for its money damages exceeding $75,000.00 in an amount to be determined at trial, plus interest, costs, attorneys' fees, and such additional damages as the Court deems just and appropriate.

## COUNT II
### (Breach of Contract – Licensing Policy)

69.     Xenios realleges and restates all of the previous paragraphs as though fully set forth herein.

70.     The Licensing Policy was a valid and enforceable contract between Xenios and Crider.

71.     Xenios performed all of its obligations under the Licensing Policy.

72.     Crider breached the Licensing Policy re-selling 2Touch licenses to new customers that were originally issued by Xenios to customers that went out of business, without notifying or paying Xenios for the licenses.

73.     Xenios respectfully requests that this Court render judgment in its favor and against Crider on Count II for its money damages exceeding $75,000.00 in an amount to be determined at trial, plus interest, costs, attorneys' fees, and such additional damages as the Court deems just and appropriate.

## COUNT III
### (Fraud)

74.     Xenios realleges and restates all of the previous paragraphs as though fully set forth herein.

75.     As described in more detail in paragraphs 28 to 43 above, Crider made material misrepresentations of fact, or omitted to disclose material facts to Xenios, regarding Crider's re-selling of 2Touch licenses to new customers that were originally issued by Xenios to customers that went out of business, without notifying or paying Xenios for the licenses.

76.     Crider intentionally and knowingly failed to disclose to Xenios that it was improperly re-selling 2Touch licenses without paying Xenios for those licenses.

77.     Crider intended to induce Xenios to rely on Crider's misrepresentations and to believe that Crider was actually following the Licensing Policy, and Xenios justifiably relied on these misrepresentations.

78.     Xenios has been damaged by Crider's fraudulent activities.

79.     Xenios respectfully requests that this Court render judgment in its favor and against Crider on Count III for its money damages in excess of $75,000.00 in an exact amount to be determined at trial, including punitive damages, plus interest, costs, attorneys' fees, and such additional damages as the Court deems just and appropriate.

## COUNT IV
### (Tortious Interference with Business Relationships)

80.     Xenios realleges and restates all of the previous paragraphs as though fully set forth herein.

81.     Xenios had a business relationship with certain bars and restaurants that used Xenios' proprietary software system called 2Touch as part of their business activities, and Crider

22421866.1

knew of this relationship.  Xenios issued licenses to these bars and restaurants for the use of 2Touch, and these bars and restaurants became Xenios' licensees.

82.     Crider intentionally interfered with these business relationships by, among other ways, (a) making false statements of fact to 2Touch customers in the October 30, 2017 email bulletin; (b) misrepresenting to 2Touch customers that it was authorized to and possessed the ability to fully service the 2Touch software system after the termination of the Dealer Agreement; (c) encouraging 2Touch customers to switch point-of-sale software to Emagine based on misstatements of fact; and (d) advising 2Touch customers that Xenios was going out of business and that they must upgrade 2Touch versions in order to continue to accept credit card payments.

83.     Crider's conduct in interfering with Xenios' relationship with customers that used 2Touch was willful and malicious.

84.     As a direct and proximate cause of Crider's interference with Xenios' business relationships, Xenios has suffered irreparable harm to its reputation and monetary damages in the form of lost customers.

85.     Xenios respectfully requests that this Court render judgment in its favor and against Crider on Count IV for its money damages exceeding $75,000.00 in an exact amount to be determined at trial, including punitive damages, plus interest, costs, attorneys' fees, and such additional damages as the Court deems just and appropriate.

## COUNT V
### (Injunctive Relief)

86.     Xenios realleges and restates all of the previous paragraphs as though fully set forth herein.

87.     As described in more detail above, Crider's conduct in: (a) continuing to use the 2Touch name and trademark in advertising and marketing; (b) continuing to identify itself as an

28

authorized dealer to market, sell or service 2Touch; (c) making misstatements of fact about 2Touch's capabilities and Xenios' business operations to customers and potential customers; (d) continuing to install software into its customers' 2Touch system that allows it to remotely access the 2Touch system; (e) writing custom keys into certain of its customers' 2Touch systems, and (f) re-selling 2Touch licenses without authorization or permission, has caused, and continues to cause real, certain and substantial harm to Xenios.

88.     Unless Crider is restrained and enjoined from engaging in or continuing to engage in the foregoing conduct, Xenios will be irreparably harmed for which Xenios has no adequate remedy at law, including loss of goodwill and the inability of 2Touch users to adequately safeguard its account and financial information.

89.     A preliminary and permanent injunction is necessary to prevent continued irreparable harm to Xenios and Xenios' licensees, and would be in the public's interest.

90.     A preliminary and permanent injunction would cause no harm to Crider.

**COUNT VI**
**(Unfair Competition Under Federal Law)**

91.     Xenios realleges and restates all of the previous paragraphs as though fully set forth herein.

92.     As explained in more detail above, Crider has without permission or authorization used Xenios' trademarked software, 2Touch, in multiple ways, including but not limited to: displaying 2Touch on many of the websites used by Crider for advertising and marketing purposes, issuing licenses to end-users to installing 2Touch without Xenios' permission or authorization, representing to end-users that it has the ability to fully service 2Touch even though the Dealer Agreement has terminated, installing software into its customers' 2Touch system that allows it to

22421866.1

remotely access the 2Touch system, and writing custom keys into certain of its customers' 2Touch systems.

93.     Crider's continued use of 2Touch in the aforementioned unauthorized ways is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Crider with Xenios and 2Touch.

94.     Crider's use in commerce of Xenios' trademarks and its false and misleading representations of facts constitute unfair competition under the Lanham Act, 15 U.S.C. §1125(a).

95.     If Crider is allowed to continue such conduct, Xenios' rights in said trademarks will be diminished and the goodwill and reputation associated with those marks will continue to suffer immediate, substantial, and irreparable injury that cannot be adequately calculated and compensated solely by monetary damages.

96.     By reason of the foregoing, Xenios is entitled to injunctive relief against Crider, restraining further acts of unfair competition and to recover monetary damages resulting from the aforesaid acts of unfair competition, together with Crider's profits related thereto.

## COUNT VII
### (Trademark Infringement Under Federal Law)

97.     Xenios realleges and restates all of the previous paragraphs as though fully set forth herein.

98.     As explained in more detail above, Crider has without permission or authorization used Xenios' trademarked software, 2Touch, in multiple ways, including but not limited to: displaying 2Touch on many of the websites used by Crider for advertising and marketing purposes, issuing licenses to end-users to install and use 2Touch without Xenios' permission or authorization, representing to end-users that it has the ability to fully service 2Touch even though the Dealer Agreement has terminated, installing software into its customers' 2Touch system that

allows it to remotely access the 2Touch system, and writing custom keys into certain of its customers' 2Touch systems.

99.     Crider's continued reproduction and use of 2Touch in the aforementioned unauthorized ways is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Crider with Xenios and 2Touch.

100.    Crider's use in commerce of Xenios' trademarks and its false and misleading representations of facts constitute trademark infringement under the Lanham Act, 15 U.S.C. §1114(1).

101.    If Crider is allowed to continue such conduct, Xenios' rights in said trademarks will be diminished and the goodwill and reputation associated with those marks will continue to suffer immediate, substantial, and irreparable injury that cannot be adequately calculated and compensated solely by monetary damages.

102.    By reason of the foregoing, Xenios is entitled to injunctive relief against Crider, restraining further acts of trademark infringement and to recover monetary damages resulting from the aforesaid acts of trademark infringement, including actual damages, statutory damages, treble damages, corrective advertising damages, costs of litigation, and attorneys' fees, together with Crider's profits related thereto.

**COUNT VIII**
**(Trademark Infringement and Unfair Competition Under State and Common Law)**

103.    Xenios realleges and restates all of the previous paragraphs as though fully set forth herein.

104.    As explained in more detail above, Crider has without permission or authorization used Xenios' trademarked software, 2Touch, in multiple ways, including but not limited to: displaying 2Touch on many of the websites used by Crider for advertising and marketing purposes,

31

issuing licenses to end-users to install and use 2Touch without Xenios' permission or authorization, representing to end-users that it has the ability to fully service 2Touch even though the Dealer Agreement has terminated, installing software into its customers' 2Touch system that allows it to remotely access the 2Touch system, and writing custom keys into certain of its customers' 2Touch systems.

105.    Crider's continued reproduction and use of 2Touch in the aforementioned unauthorized ways is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Crider with Xenios and 2Touch.

106.    Crider's use in commerce of Xenios' trademarks and its false and misleading representations of facts constitute unfair competition and trademark infringement under Ohio, New York and common law.

107.    If Crider is allowed to continue such conduct, Xenios' rights in said trademarks will be diminished and the goodwill and reputation associated with those marks will continue to suffer immediate, substantial, and irreparable injury that cannot be adequately calculated and compensated solely by monetary damages.

108.    By reason of the foregoing, Xenios is entitled to injunctive relief against Crider, restraining further acts of trademark infringement and to recover monetary damages resulting from the aforesaid acts of trademark infringement, including actual damages, statutory damages, treble damages, corrective advertising damages, costs of litigation, and attorneys' fees, together with Crider's profits related thereto.

**WHEREFORE**, Xenios seeks the following relief:

A.      Regarding Count I (Breach of Dealer Agreement):  judgment in its favor and against Crider for its money damages exceeding $75,000.00 in an amount to be determined at trial, plus interest, costs, attorneys' fees, and such additional damages as the Court deems just and appropriate.

B.      Regarding Count II (Breach of Licensing Policy): judgment in its favor and against Crider for its money damages exceeding $75,000.00 in an amount to be determined at trial, plus interest, costs, attorneys' fees, and such additional damages as the Court deems just and appropriate.

C.      Regarding Count III (Fraud): judgment in its favor and against Crider for its money damages exceeding $75,000.00 in an exact amount to be determined at trial, including punitive damages, plus interest, costs, attorneys' fees, and such additional damages as the Court deems just and appropriate;

D.      Regarding Count IV (Tortious Interference with Business Relationships): judgment in its favor and against Crider for its money damages exceeding 75,000.00 in an exact amount to be determined at trial, including punitive damages, plus interest, costs, attorneys' fees, and such additional damages as the Court deems just and appropriate;

E.      Regarding Count V (Injunctive Relief): judgment in its favor and against Crider prohibiting Crider from: displaying 2Touch on many of the websites used by Crider for advertising and marketing purposes, issuing licenses to end-users to install and use 2Touch without Xenios' permission or authorization, representing to end-users that it has the ability to fully service 2Touch even though the Dealer Agreement has terminated, installing software into its customers' 2Touch system that allows it to remotely access the 2Touch system, writing custom keys into certain of its

33

customers' 2Touch systems and making misstatements of fact about 2Touch's capabilities and Xenios' business operations to customers and potential customers;

      F.      Regarding Count VI (Unfair Competition Under Federal Law): judgment in its favor and against Crider for injunctive relief against Crider, restraining further acts of unfair competition and to recover monetary damages resulting from the aforesaid acts of unfair competition, together with Crider's profits related thereto, statutory damages and attorneys' fees;

      G.      Regarding Count VII (Trademark Infringement Under Federal Law): judgment in its favor and against Crider for injunctive relief against Crider, restraining further acts of trademark infringement and to recover monetary damages resulting from the aforesaid acts of trademark infringement, including actual damages, statutory damages, treble damages, corrective advertising damages, costs of litigation, and attorneys' fees, together with Crider's profits related thereto;

      H.      Regarding Count VIII (Trademark Infringement and Unfair Competition Under State and Common Law): judgment in its favor and against Crider for injunctive relief against Crider, restraining further acts of trademark infringement and to recover monetary damages resulting from the aforesaid acts of trademark infringement, including actual damages, statutory damages, treble damages, corrective advertising damages, costs of litigation, and attorneys' fees, together with Crider's profits related thereto;

      I.      That Xenios be awarded such other damages, including but not limited to, punitive damages, to which Xenios may show itself entitled to recover; and

      J.      All other just and proper relief.


[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted,


/s/ Joseph C. Pickens
Joseph C. Pickens      (0076239)
jpickens@taftlaw.com
Taft Stettinius & Hollister, LLP
65 East State Street, Suite 1000
Columbus, Ohio 43215
Telephone: (614) 221-2838
Facsimile:  614) 221-2007

*Attorney for Defendant*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing *Answer and Counterclaim of Defendant Xenios, LLC* was served through the Court's CM/ECF system this 3rd day of May, 2018 upon:

James H. Cannon, Esq.
CANNON LAW, LLC
90 Northwoods Boulevard, Suite B1-7
Columbus, Ohio 43235


/s/ Joseph C. Pickens
Joseph C. Pickens

35